PD-1337-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/12/2015 10:44:42 AM
Accepted 10/14/2015 4:37:23 PM
ABEL ACOSTA
CLERK

NO. 13-15-00069-CR

## TO THE COURT OF CRIMINAL APPEALS

## OF TEXAS

**THE STATE OF TEXAS**             **Appellant,**

v.

**ROGER ANTHONY MARTINEZ**           **Appellee.**

Appeal from Victoria County

## STATE'S PETITION FOR DISCRETIONARY REVIEW

STEPHEN B. TYLER
Criminal District Attorney
Victoria County, Texas
Bar I.D. No. 24008186

BRENDAN W. GUY
Assistant Criminal District Attorney
Victoria County, Texas
Bar I.D. No. 24034895
205 N. Bridge St. Ste. 301,
Victoria, Texas 77901-6576
(361) 575-0468 (Telephone)
(361) 570-1041 (Fax)
bguy@vctx.org (E-mail)

FILED IN
COURT OF CRIMINAL APPEALS

October 14, 2015

ABEL ACOSTA, CLERK

## Identity of Judge, Parties, and Counsel

Pursuant to Tex. R. App. P. 68.4(a) (2014), the Judge, parties, and counsel in this suit are:

**TRIAL JUDGE:**

The Honorable Eli Elmo Garza
377th Judicial District Court
Victoria, Texas

**APPELLANT:**

The State of Texas

**APPELLEE:**

Roger Anthony Martinez

**TRIAL PROSECUTOR:**

Brendan Wyatt Guy
State Bar # 24034895
Assistant Criminal District Attorney
205 N. Bridge St., Suite 301
Victoria, TX 77901-6576

**TRIAL DEFENSE ATTORNEY:**

Micah Wayne Hatley
State Bar # 24053260
P. O. Box 2113
Victoria, TX 77902

**APPELLATE STATE'S ATTORNEY:**

Brendan Wyatt Guy
State Bar #24034895
Assistant Criminal District Attorney
205 N. Bridge St., Suite 301
Victoria, TX 77901-6576

**APPELLATE DEFENSE ATTORNEY:**

Luis Adrian Martinez
State Bar # 24010213
209 West Juan Linn
P. O. Box 410
Victoria, TX 77902

# Table of Contents

Identity of Judge, Parties, and Counsel............................................................2

Table of Contents ................................................................................. 3-4

Index of Authorities............................................................................. 5-7

Statement Regarding Oral Argument ....................................................8

Statement of the Case......................................................................... 8-9

Statement of Procedural History....................................................... 9-10

Statement of Facts............................................................................ 10-15

Ground for Review ........................................................................... 15-16

I. The Court of Appeals failure to apply the correct standard of review to the question of whether officers were participants in an arrest so far departs from the accepted and usual course of judicial proceedings as to call for the exercise of the Court of Criminal Appeals' power of supervision ........................................................15

II. The Court of Appeals erroneously decided an important question of State law that has not but should be settled by the Court of Criminal Appeals: are the courts to look only at the knowledge of the officer who carried out the physical seizure of a detainee or should the courts look to the collective knowledge of the entire arrest team in determining if there was probable cause to arrest....................15

III. The Court of Appeals' erroneously decided an important question of State law that has not but should be settled by the Court of Criminal Appeals: what does it take for an officer who does not carry out the actual physical seizure

of an arrestee to be considered a participant to the arrest for the purposes of Article 14.01 of the Code of Criminal Procedure ...................................................................16

Argument and Authorities.............................................. 16-27

  I.  The Court of Appeals committed reversible error by applying the wrong standard of review for determining whether or not Officers Guerrero and Ramirez participated in the arrest of the Appellee............................. 16-19

  II. The Court of Appeals erroneously decided an important question of State law that has not but should be settled by the Court of Criminal Appeals when it concluded that only the knowledge possessed by the officer who carried out the physical seizure of the Appellee would be considered in determining whether there was probable cause to conduct an arrest ........................................ 19-23

  III. The Court of Appeals committed reversible error by holding that police officers must relay their observations of criminal activity to the officer who executes the actual physical seizure of the arrestee.............................. 23-27

Prayer ............................................................................28

Signature........................................................................28

Certificate of Compliance .............................................29

Certificate of Service ....................................................30

Appendix........................................................ A-1-A-12

  I.   Appendix Table of Contents...............................A-1

  II.  Oct. 1, 2015 Memorandum Opinion
       in Cause Number 13-15-00069-CR
       State of Texas v Roger Anthony Martinez.................A-2-A-12

# Index of Authorities

## United States Supreme Court Cases

*Arizona v. Gant*, 556 U.S. 332 (2009) ........................................................................A-8

*Beck v. Ohio*, 379 U.S. 89 (1964) ...............................................................................A-6

## Texas Cases

*Amador v. State*, 275 S.W. 3d 872 (Tex. Crim. App. 2009)...........A-8-A-9
........................................................................................................................A-11

*Astran v. State*, 799 S.W. 2d 761 (Tex. Crim. App. 1990).........15, 24, 27,
........................................................................................................................ A-9-A-11

*Baird v. State*, 398 S.W. 3d 220 (Tex. Crim. App. 2013)............A-7, A-11,
........................................................................................................................ A-12

*Banda v. State*, 890 S.W. 2d 42 (Tex. Crim. App. 1994) .......................A-6

*Britton v. State*, 578 S.W. 2d 685 (Tex. Crim. App. 1978) ....................A-6

*Coleman v. State*, 359 S.W. 3d 749
(Tex. App.-Houston [1st Dist] 2012, pet. ref'd)......................................A-6

*Derichsweiler v. State*, 348 S.W. 3d 906 (Tex. Crim. App. 2011) .... 21-22

*Ford v. State*, 158 S.W. 3d 488 (Tex. Crim. App. 2005)............. A-8, A-12

*Guzman v. State*, 955 S.W. 2d 685 (Tex. Crim. App. 1997).................A-6

*Hughes v. State*, 878 S.W. 2d 142 (Tex. Crim. App. 1992) ..................A-6

*Kapuscinski v. State*, 878 S.W. 2d 248
(Tex. App.-San Antonio 1994, writ. ref'd)..............................................A-9

*Kothe v. State*, 152 S.W. 3d 54 (Tex. Crim. App. 2004) ..........................16

*Losereth v. State*, 963 S.W. 2d 770 (Tex. Crim. App. 1998)....................16

*Robinson v. State*, 377 S.W. 3d 712 (Tex. Crim. App. 2012) .................18

*State v. Garrett*, 22 S.W. 3d 650
(Tex. App.-Austin 2000, no pet)...........................................................A-6

*State v. Martinez*, No. 13-15-00069-CR, 2015 WL 5797604,
(Tex. App.-Corpus Christi, Oct. 1, 2015, pet. filed)......................4, 9, 15,
....................................................................................................17, 20, 24,
.....................................................................................................25, A-1-A-12

*Willis v. State*, 669 S.W. 2d 728 (Tex. Crim. App. 1984)..........15, 24, A-9,
.......................................................................................................A-10-A-11

*York v. State*, 342 S.W. 3d 528 (Tex. Crim. App. 2011)........................A-9

## United States Constitution

U.S. CONST. amend. IV .......................................................................A-8

U.S. CONST. amend. V .....................................................................10, A-3

## Texas Statutes

TEX. CODE CRIM. PROC. art 14.01 (West 2005) ......... 4, 16, A-6-A-8
.................................................................................................. A-10

TEX. CODE CRIM. PROC. ANN art 44.01 (West 2014)...................A-7

TEX. GOV'T CODE §311.002 (West 2013) ......................................A-6

TEX. GOV'T CODE §311.011 (West2013) ......................................A-6

TEX. HEALTH & SAFETY CODE §481.115 (West 2010) .............. A-2, ..........................................................................................................A-3

TEX. PENAL CODE ANN. §1.07 (West 2014) ......................................A-9

TEX. PENAL CODE §38.11 (West 2011) ...............................................A-2

TEX. PENAL CODE ANN. §49.02 (West 2011) .......................... A-3, A-8

## Texas Rules

TEX. R. APP. 9.4.................................................................................29

TEX. R. APP. 47.1........................................................................... A-12

TEX. R. APP. P. 68.4..............................................................................2

## No. 13-15-00069-CR

## TO THE COURT OF CRIMINAL APPEALS

## OF THE STATE OF TEXAS

THE STATE OF TEXAS, ..................................................................................Appellant

v.

ROGER ANTHONY MARTINEZ, ................................................................Appellee

\* \* \* \* \*

## STATE'S PETITION FOR DISCRETIONARY REVIEW

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through its Criminal District Attorney

for Victoria County, and respectfully urges this Court to grant discretionary review

of the above named cause, pursuant to the rules of appellate procedure.

### Statement Regarding Oral Argument

Oral argument is waived.

### Statement of the Case

Appellee was charged by indictment on June 26, 2014 in Cause Number 14-06-28047-A with one count of Possession of a Controlled Substance in a Correctional Facility and one count of Possession of a Substance in Penalty Group

1 in an amount of less than 1 gram. [CR-I-5]. On January 26, 2015, the Appellee filed a motion to suppress. [CR-I-17-20]. A hearing was held on that motion to suppress on February 4, 2015. [RR-I-1]. That same day the trial court, with the Honorable Eli Garza presiding, granted Appellee's motion to suppress with a written order. [CR-I-14]. On February 5, 2015, the State requested written findings of fact and conclusions of law. [CR-I-23-24]. On February 6, 2015, the trial court issued its written findings of fact and conclusions of law. [CR-I-26-28]. The State timely filed its notice of appeal on February 9, 2015. [CR-I-29-32]. On October 1, 2015, the Thirteenth Court of Appeals (hereafter Court of Appeals) affirmed the trial court ruling granting the motion to suppress. *State v. Martinez*, No. 13-15-00069-CR, 2015 WL 5797604 (Tex. App.-Corpus Christi, Oct. 1, 2015, pet. filed). The Court of Appeals concluded that because Officers Guerrero and Martinez did not relay what they observed at the arrest scene to Officer Quinn (the officer who actually carried out the physical arrest of the Appellee), it was reasonable for the trial court to infer that they did not participate in the arrest, and therefore that the trial court did not err in its determination that the State failed to show that the search was reasonable. *Id.* at 10-11.

## Statement of Procedural History

On October 1, 2015, the Thirteenth Court of Appeals upheld the trial court's suppression of evidence. *Id.* at 11. No motion for rehearing was filed. The State's

petition is due November 2, 2015.

## Statement of Facts

At the suppression hearing in this case, the State was unable to call Officer Patrick Quinn, the officer who arrested the Appellee for the offense of public intoxication in this case, due to Officer Quinn invoking his Fifth Amendment rights due to him being under indictment in Harris County. [RR-I-6-7; State's Exhibit 1].

The State thus called Javier Guerrero to testify. [RR-I-7-8]. Officer Guerrero testified that on January 5, 2014, he was on duty and met the Appellee when Officer Guerrero was called out to the G&G Lounge to help investigate a possible fight in the parking lot of that business. [RR-I-9-10].

Officer Guerrero then described how he arrived at the back parking lot of that location and observed two individuals arguing, one of whom was the Appellee. [RR-I-10-11]. Officer Guerrero then established that he was the first officer on the scene, and that Officer Ramirez, Dial, and Quinn all also came to the scene. [RR-I-11].

Officer Guerrero then clarified that the confrontation between the two individuals in the parking lot was strictly verbal, but that the two people were screaming at each other. [RR-I-12]. Officer Guerrero also established that he believed the Appellee was intoxicated due to the Appellee having difficulty standing and due to the smell of alcohol on Appellee's breath. [RR-I-12]. Officer

Guerrero also noted that the Appellee's eyes were "real glassy" and that the Appellee's voice was "slurred" and testified that both of those qualities could be signs of intoxication. [RR-I-13]. Officer Guerrero then characterized Appellee's behavior towards him as "very aggressive" and described how the Appellee would not let the officers talk and tried to talk over them. [RR-I-13]. Officer Guerrero also noted that the Appellee did not comply with police instructions and that the Appellee's conduct was interfering with the police investigation. [RR-I-13-14]. Officer Guerrero then confirmed that the odor of alcohol was present on both Appellee's breath and person. [RR-I-14].

Officer Guerrero then testified that the other person at the scene with the Appellee was a woman named Danielle who he believed was also intoxicated. [RR-I-14]. Officer Guerrero then established he did not know if there was anyone else present at the location that could have taken care of the Appellee because Appellee's conduct made it impossible for the police to talk with him. [RR-I-14-15]. Officer Guerrero also stated that Appellee never said he had called a cab and stated Appellee did not appear fit to drive. [RR-I-15].

Officer Guerrero then established that the Appellee was arrested for public intoxication by Officer Quinn. [RR-I-16]. Officer Guerrero also established that he personally witnessed the arrest and did not observe any misconduct by Officer Quinn. [RR-I-17].

Officer Guerrero also testified that the back parking lot was in use at the time of the incident, that it had major roadways nearby, and that cars were able to freely go in and out of that parking lot. [RR-I-17].

On re-direct, Officer Guerrero explained that he was about two feet away from the Appellee during the investigation. [RR-I-24]. Officer Guerrero also confirmed that none of the officers on scene disagreed with the decision to arrest the Appellee. [RR-I-24]. Officer Guerrero also established that the Appellee did not explain how he had gotten to the G&G Lounge and did not appear to be in a condition where he could safely walk home. [RR-I-25].

The State then called Officer Timothy Ramirez of the Victoria Police Department to testify. [RR-I-26-27]. Officer Ramirez explained that on January 5, 2014, he was one of the officers called to investigate a possible fight at the G&G Lounge. [RR-I-27-28].

Officer Ramirez then confirmed meeting the Appellee that evening and stated that he believed the Appellee was intoxicated that night. [RR-I-29]. Officer Ramirez then explained why he believed the Appellee was intoxicated and described the Appellee as having slurred speech, a swayed stance, red and glassy eyes, and having the odor of alcohol emitting from his breath and person. [RR-I-29]. Officer Ramirez further established he was within two to three feet of the Appellee when he made those observations. [RR-I-29].

Officer Ramirez then described how Appellee's behavior was "very aggressive and belligerent", noted that Appellee would not cooperate with the police investigation, and indicated that the Appellee was yelling at the police. [RR-I-29].

Officer Ramirez then noted that the parking lot was approximately 15 feet away from a roadway that was in use and approximately 15 to 20 feet from South Laurent. [RR-I-31-32]. Officer Ramirez then explained that South Laurent gets "very heavy traffic" and that it can get heavy traffic even as late in the evening as the time when Officer Ramirez made contact with the Appellee. [RR-I-32].

Officer Ramirez then noted that there was no one present who was fit to take care of the Appellee and that the Appellee did not ask to have someone come and pick him up or ask to call for a taxi. [RR-I-32]. Officer Ramirez also stated that in his opinion the Appellee was not in a fit condition to drive or to walk home. [RR-I-32-33].

Officer Ramirez then confirmed witnessing the actual arrest of the Appellee by Officer Quinn. [RR-I-33]. Officer Ramirez then stated he did not observe any misconduct on Officer Quinn's part and noted that none of the other officers present at the scene disagreed with Officer Quinn's arrest decision. [RR-I-33].

On re-direct, Officer Ramirez described how the police were unable to effectively talk with the Appellee due to his continual yelling of obscenities and his

refusal to follow police instructions. [RR-I-35-36].

After argument, the trial court issued its ruling. [RR-I-53]. The trial court declined to make any finding as to improper actions by Officer Ramirez or Officer Guerrero. [RR-I-54]. Nevertheless, the trial court granted Appellee's motion to suppress. [RR-I-55].

The trial court subsequently issued written findings of fact and conclusions of law. [CR-I-26-28]. Those findings established that Officer Guerrero and Ramirez were two of the officers that responded to the scene of the disturbance investigation in this case. [CR-I-26]. The trial court further found that the officers made contact with the Appellee as part of their investigation in this case. [CR-I-26]. The trial court also testified that both Officer Guerrero and Ramirez testified that "the defendant demonstrated signs of intoxication." [CR-I-26]. The trial court then noted there was no evidence from Officer Quinn about whether the offense of public intoxication was committed within his presence or view. [CR-I-26-27]. The trial court also noted that there was no evidence that Officer Guerrero or Ramirez's observations were communicated to Officer Quinn. [CR-I-26]. The trial court concluded that Officer Quinn was the only officer who affected the arrest. [CR-I-26]. The trial court then declined to speculate as to what Officer Quinn observed prior to the arrest and thus granted the suppression. [CR-I-28].

The Court of Appeals held that determination of whether Officers Guerrero

and Ramirez participated in the arrest of the Appellant was a factual question. *Martinez,* 13-15-00069-CR at 8. The Court of Appeals further held that the *Willis* and *Astran* cases cited by the State for the proposition that an officer could participate in an arrest without being the officer who effected the actual physical seizure of the arrestee, were distinguishable from the present case since those cases involved the other officers relaying their observations to the officer who performed the physical seizure of the arrestee. *Martinez,* 13-15-00069-CR at 10; *Willis v. State,* 669 S.W. 2d 728 (Tex. Crim. App. 1984); *Astran v. State,* 799 S.W. 2d 761 (Tex. Crim. App. 1990). The Court of Appeals also held that the fact finder did not make findings that Officers Guerrero and Ramirez participated in the arrest of the Appellee. *Martinez, 13-15-00069-CR at 10-11.* The Court of Appeals then upheld the trial court's ruling. *Id.* at 11.

## Ground for Review

I. **The Court of Appeals failure to apply the correct standard of review to the question of whether officers were participants in an arrest so far departs from the accepted and usual course of judicial proceedings as to call for the exercise of the Court of Criminal Appeals' power of supervision.**

II. **The Court of Appeals erroneously decided an important question of State law that has not but should be settled by the Court of Criminal Appeals: are the courts to look only at the knowledge of the officer who carried out the physical seizure of a detainee or should the courts look to the collective knowledge of the entire arrest team in determining if there was probable cause to arrest.**

**III. The Court of Appeals' erroneously decided an important question of State law that has not but should be settled by the Court of Criminal Appeals: what does it take for an officer who does not carry out the actual physical seizure of an arrestee to be considered a participant to the arrest for the purposes of Article 14.01 of the Code of Criminal Procedure.**

## Argument and Authorities

**I. The Court of Appeals committed reversible error by applying the wrong standard of review for determining whether or not Officers Guerrero and Ramirez participated in the arrest of the Appellee.**

Questions involving legal principles and the application of law to established facts have always been properly reviewed *de novo*. *Kothe v. State,* 152 S.W. 3d 54, 62-63 (Tex. Crim. App. 2004). Likewise mixed questions of law and fact that do not turn on evaluations of credibility and demeanor should also be reviewed *de novo*. *Losereth v. State,* 963 S.W. 2d 770, 772 (Tex. Crim. App. 1998). In this case the undisputed facts accepted by the trial court make clear that there was no question as to the credibility and demeanor of the testifying officers, Officer Guerrero and Officer Ramirez. As such the question of whether Officers Guerrero and Ramirez were participants in the arrest of the Appellee under Article 14.01 of the Texas Code of Criminal Procedure was not a factual question but instead was a mixed question of fact and law that did not depend on credibility and which therefore should have been reviewed *de novo*. The Court of Appeals failed to do this and instead treated the legal question of whether Officers Guerrero and

Ramirez participated in the arrest of the Appellee as a factual question. *Martinez,* 13-15-00069-CR at 8, 10. That decision was erroneous and must be corrected.

There was plainly no meaningful dispute concerning the underlying facts about what Officers Guerrero and Ramirez actually did in this case. This is made clear by both the trial court's written and verbal findings and by the fact that defense counsel never disputed the testimony of Officer Guerrero and Ramirez concerning the nature of their involvement in the police investigation in this case.

The trial court's written findings of fact recognized that Officer Ramirez and Guerrero were two of the police officers that responded to the reported disturbance in this case. [CR-I-26]. The trial court further found that officers made contact with the Appellee. [CR-I-26]. Thus the trial court clearly accepted that Officers Ramirez and Guerrero were part of the police unit investigating the disturbance at issue in this case. The trial court further found that Officers Ramirez and Guerrero testified to observing the arrest of the Appellee and testified that they believed the Appellee was intoxicated. [CR-I-26]. Nor is there any indication the trial court disbelieved Officer Ramirez and Guerrero concerning what they testified to observing. Quite the contrary in fact as the trial court explicitly refused to find that there was any improper action by Officers Ramirez or Officer Guerrero in regards to this case. [RR-I-54]. Thus the trial court clearly believed Officer Ramirez and Officer Guerrero when they testified to believing there was probable cause to arrest

the Appellee for the offense of public intoxication. (The trial court would hardly conclude that there was no misconduct on the part of Officers Ramirez and Guerrero if they accepted the arrest of the Appellee without believing the police had probable cause to do so.)

Nor did the defense counsel ever dispute that Officers Ramirez and Guerrero were present and actively involved in the police investigation in this case. Defense counsel's own closing argument did not challenge the underlying facts of what Officers Guerrero and Ramirez testified to and indeed openly asserted that Officers Guerrero and Ramirez were present at the arrest scene. [RR-I-47-51]. Thus it is clear that there was no dispute about the facts of Officer Guerrero and Officer Ramirez's involvement in this case.

Given that there was no dispute about what Officers Guerrero and Ramirez actually did in regards to this case, the significance of their testimony did not turn on any question of their credibility or demeanor. Rather, the significance of their testimony turned entirely on the legal question of whether the actions of those two officers were legally sufficient to make them participants in the arrest of the Appellee. When the dispute over an issue concerns the legal significance of what was done rather than what was done, the dispute is a question of law not fact. See *Robinson v. State*, 377 S.W. 3d 712, 722 (Tex. Crim. App. 2012). Thus the critical issue in this case: were Officers Guerrero and Ramirez participants in the arrest of

the Appellee was a legal question rather than a factual question and as such it was properly subject to *de novo* review. To the extent the Court of Appeals held otherwise, treating that question as a factual matter, the Court of Appeals committed plain error.

Nor was this a minor error. The Court of Appeals' error meant that it just deferred to the trial court's "factual" conclusion that Officers Guerrero and Ramirez were not participants in the arrest of the Appellee rather than conduct its own vigorous legal analysis on that issue. If the Court of Appeals had applied the correct standard of review it would have been forced to conclude that Officers Guerrero and Ramirez were participants in the arrest of the Appellee and the entire outcome of the case would have been different. Thus the Court of Appeals made a grievous error by applying the wrong standard of review to the essential question of the entire case. Such an error falls well outside the accepted and usual course of judicial proceedings and thus necessitates the Court of Criminal Appeals exercising its supervisory powers to correct.

## II. The Court of Appeals committed reversible error by evaluating whether the police had probable cause to arrest from the vantage point of the officer who affected the actual physical seizure rather than from the vantage point of the entire arrest team.

In addition to applying the wrong standard of review in this case, the Court of Appeals also treated the resolution of two "factual issues" as dispositive. These

issues were: 1) was there any evidence that Officer Quinn observed or was informed that the Appellee committed a crime prior to his arrest of the Appellee and 2) did either Officer Guerrero or Ramirez relay their own observations of the Appellee's criminal conduct to Officer Quinn. *Martinez*, 13-15-00069-CR at 8, 10-11. By asserting that the resolution of those two issues was case dispositive, the Court of Appeals decided two important questions of State law.

The first question the Court of Appeals so decided was whether in evaluating the legality of an arrest, is a reviewing court to look just to the knowledge available to the officer who carries out the physical seizure of the arrestee or is the reviewing court to instead look to the collective knowledge of all of the police officers involved with the arrest? The Court of Appeals answered that question by effectively holding that reviewing courts are to look only to the knowledge known to the officer who carried out the physical seizure of the arrestee. *Martinez*, 13-15-00069-CR at 10. The second question of State law that the Court of Appeals decided was under what circumstances is an officer who does not perform the actual physical seizure of an arrestee to be considered a participant in the arrest? The Court of Appeals decided that question by effectively holding that the only way a supporting officer can be considered a participant to an arrest is by "relaying his observations to other officers, who then made the arrest based on those observations." *Martinez*, 13-15-00069-CR at 10. These are both important legal

questions as they get right at the heart of what constitutes a lawful arrest, and the Court of Appeals answered them by creating a very narrow standard wherein only the knowledge known to the officer who performs the actual physical seizure is to be considered and the only way others officers can be deemed to have participated in the arrest is by relaying their own observations to that officer. The State contends the standard adopted by the Court of Appeals is unreasonable, and thus these important questions of State law should be decided by the Court of Criminal Appeals, which should in turn reject the unreasonably narrow standard adopted by the Court of Appeals in favor of a more flexible standard that looks to the collective knowledge of the entire arrest team and that recognizes there are many ways that a supporting officer can be a participant in an arrest beyond simply relaying their own observations to other officers.

A more flexible standard on these questions is more consistent with established Texas law. As to the question of whether to look to the knowledge of the entire arrest team or just the officer who executes the physical seizure of the arrestee, it is already settled Texas law that when evaluating whether the police had reasonable suspicion to detain an individual, the "detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain". *Derichsweiler v. State*, 348 S.W. 3d 906, 914 (Tex. Crim. App. 2011). Rather reviewing courts are to look to "the cumulative information known to the

cooperating officers at the time of the stop." *Derichsweiler,* 348 S.W. 3d at 914.

If the collective knowledge of all of the investigating officers is to be used to establish the legality of a detention, it is only logical to apply the same approach to evaluating the legality of an arrest. The ultimate question as to an arrest is whether the arresting officers had probable cause that a crime had been committed, and obviously if the aggregate knowledge of the investigating police officers establishes probable cause, then there was probable cause, which in turn means the subsequent arrest was lawful. Thus it is only logical to look to the information possessed by the entire arrest team at the time of the arrest.

Extending *Derichsweiler* to apply not just to detentions but also to arrest situations fully protects the rights of defendants (who still will not be subject to being arrested unless the police have probable cause that an offense was committed at the time the police make the arrest), while also recognizing the necessity of cooperative police investigations. Therefore such an approach helps facilitate responsible law enforcement without infringing on the rights of defendants. It is good policy that builds off of established, reasonable case law and thus that is the legal standard that should have been applied in this case.

As such the Court of Appeals' erred by focusing on whether Officer Quinn had enough information to lawfully arrest the Appellee when it should have instead addressed whether the arrest team as a whole (including Officers Guerrero and

Ramiriez) had sufficient information to establish probable cause to arrest the Appellee. If the correct inquiry had been conducted then the undisputed facts would have made it clear that Officers Guerrero and Ramirez each had more than enough information to establish probable cause to arrest the Appellee for the offense of public intoxication. [RR-I-12-17, 25, 29, 31-33, 35-36]. It was therefore immaterial what Officer Quinn knew or did not know; the arrest team as a whole had probable cause to arrest the Appellee for public intoxication, and that meant that the arrest of the Appellee was lawful. The Court of Appeals held otherwise based on a legal standard it created where only the knowledge of the officer who carried out the physical seizure of the arrestee mattered. That standard should be rejected and the case should instead be evaluated under consideration of whether the arrest team as a whole had probable cause, and under that standard it is clear there was probable cause, and thus the Court of Appeals ruling should be reversed.

## III. The Court of Appeals committed reversible error by holding that police officers must relay their observations of criminal activity to the officer who executes the actual physical seizure of the arrestee.

As to the second legal question decided by the Court of Appeals, what does it take for a supporting officer to be a participant to an arrest, the Court of Appeals effectively held that the only way a supporting officer can be a participant to an arrest is by relaying their observations of criminal activity to the officer who

carries out the actual physical seizure of the arrestee. *Martinez,* 13-15-00069-CR at 10. This hyper-narrow standard is not required by existing Texas law as neither the *Astran* nor *Willis* cases established that the only way a supporting officer could be a participant to an arrest was by relaying their own observations to the officers who carry out the actual arrest. See *Astran,* 799 S.W. 2d at 762, 764; *Willis,* 669 S.W. 2d at 730. Instead all *Astran* required was that the supporting officer be "an integral part of the arrest team" and that they were "fully aware of the circumstances of the arrest." *Astran,* 799 S.W. 2d at 764. Thus the hyper-narrow standard created by the Court of Appeals, which leaves only one way that an officer can be "an integral part of the arrest team", should be rejected and the Court of Criminal Appeals should clarify that there are many ways that an officer can be considered a participant to an arrest.

That there are many different ways an officer can be an integral part of an arrest team beyond just relaying their observations to other officers is plain common sense. As such it makes no sense to establish a legal standard where the only way supporting officers can be considered an integral part of the arrest team is if they verbally relay their observations to another officer. Such a standard would lead to absurd results whereby an officer that is a mile away from the arrest site, remotely monitoring the arrestee and relaying his observations over the radio would be considered a participant in an arrest, whereas the officer providing back-

up support right alongside the arresting officer would not be considered part of the arrest team. That makes no sense. The officers who are acting as back-up at the arrest location are obviously an integral part of the arrest. Merely by being present they provide crucial support to an arrest, helping to deter the arrestee or third parties from trying to flee from or fight the officer who is tasked with carrying out the actual physical seizure of the arrestee. And obviously if the arrestee does attempt to fight or run for it, the back-up officers will be called upon to come to the aid of their fellow officer. Thus those supporting officers are just as integral to an arrest as the officer who carries out the actual physical seizure of the arrestee.

Therefore while relaying your observations to another officer is certainly one way that an officer can be an integral part of an arrest, it is clearly not the only way an officer can be an integral part of an arrest, and as such, it makes no sense to utilize a legal standard where that is the only way that an officer can be considered a participant in an arrest. But that is exactly the legal standard the Court of Appeals created in this case; the Court of Appeals treated it as case dispositive that there was no testimony that either Officer Guerrero or Officer Ramirez ever relayed their own observations to Officer Quinn, and therefore refused to consider any other way by which Officer Guerrero and Officer Ramirez could be participants in the arrest. *Martinez,* 13-15-00069-CR at 10.

In this case the undisputed facts accepted by the trial court established that

both Officer Guerrero and Ramirez were part of the police unit that responded to the disturbance at issue in this case, and that they were both present during the arrest of the Appellee. [CR-I-26]. Therefore if the Court of Appeals had considered other possible ways by which an officer could be "an integral part of the arrest team" rather than just limit their analysis to consideration of if they relayed their own observations to Officer Quinn, then the Court of Appeals would have been forced to conclude that both Officer Guerrero and Ramirez were an integral part of the arrest of the Appellee. They were both present right alongside Officer Quinn, backing him up in carrying out the arrest, and certainly they would have been just as much involved if the Appellee or a third party had decided to resist or evade the arrest. Thus they were clearly as a matter of law just as much part of the arrest team as Officer Quinn was.

It is likewise clear that both Officer Guerrero and Officer Ramirez were familiar with the circumstances of the arrest. [RR-I-12-17, 25, 29, 31-33, 35-36]. And clearly the trial court accepted their testimony as to observing sufficient facts to conclude there was probable cause to arrest the Appellee for public intoxication, since as already discussed, the trial court did not find that either Officer Guerrero or Ramirez did anything wrong in relation to this case. [RR-I-54]. (A finding that would be untenable if the trial court believed Officers Guerrero and Ramirez had acquiesced to the arrest of the Appellee without reasonably believing there was

probable cause to justify such an arrest.)

As such the Court of Criminal Appeals should definitively settle the important question of State law, improperly decided by the Court of Appeals in this case, by making clear that a supporting officer can be an integral part of an arrest by methods other than just relaying their observations of criminal activity to the officer who carries out the physical seizure of the arrestee. Once the correct legal standard is applied, it will be clear that Officer Guerrero and Ramirez were participants to the arrest by the standard set down in *Astran,* which in turn means their testimony was sufficient to establish that there was probable cause to arrest the Appellee, and as such the Court of Appeals ruling upholding the granting of Appellee's motion to suppress was in error and should be reversed.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** the State prays that this Honorable Court grant this Petition for Discretionary Review and reverse the decision of the Court of Appeals.

**Respectfully submitted,**

**STEPHEN B. TYLER**
**CRIMINAL DISTRICT ATTORNEY**

**/s/ Brendan W. Guy**
**Brendan W. Guy**
Assistant Criminal District Attorney
SBN 24034895
205 North Bridge Street, Suite 301
Victoria, Texas 77902
Telephone: (361) 575-0468
Facsimile: 361 (576)-4139
E-mail: bguy@vctx.org

**ATTORNEYS FOR THE APPELLANT,**
**THE STATE OF TEXAS**

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in Appellant's Petition for Discretionary Review submitted on October 12, 2015, excluding those matters listed in Rule 9.4(i)(3) is 4,498.

/s/ **Brendan W. Guy**
**BRENDAN W. GUY**
Assistant Criminal District Attorney
SBN 24034895
205 N. Bridge St., Suite. 301
Victoria, TX 77901
Telephone: (361) 575-0468
Facsimile: 361 (576)-4139
E-mail:bguy@vctx.org

**ATTORNEY FOR APPELLANT,**
**THE STATE OF TEXAS**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's Petition for Discretionary Review has been served on Luis Martinez, Attorney for the Appellee, and on Lisa McMinn, State Prosecuting Attorney, by depositing same in the United States Mail, postage prepaid on the day of October 12, 2015.

/s/ **Brendan W. Guy**
**BRENDAN W. GUY**
Assistant Criminal District Attorney
SBN 24034895
205 N. Bridge St., Suite. 301
Victoria, TX 77901
Telephone: (361) 575-0468
Facsimile: 361 (576)-4139
E-mail:bguy@vctx.org

**ATTORNEY FOR APPELLANT,**
**THE STATE OF TEXAS**

# APPENDIX

## Table of Contents

Table of Contents ................................................................... A-1

**Oct. 1, 2015 Memorandum Opinion
in Cause Number 13-15-00069-CR
State of Texas v Roger Anthony Martinez**.....................................A-2-A-12



NUMBER 13-15-00069-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI- EDINBURG

THE STATE OF TEXAS,                                             **Appellant,**

v.

ROGER ANTHONY MARTINEZ,                      **Appellee.**

On appeal from the 24th District Court
of Victoria County, Texas.

# MEMORANDUM OPINION

Before Justices Garza, Benavides and Longoria
Memorandum Opinion by Justice Garza

Appellee, Roger Anthony Martinez, was charged by indictment with one count of possession of a controlled substance in a correctional facility, a third-degree felony, *see* TEX. PENAL CODE ANN. § 38.11(d)(1) (West, Westlaw through 2015 R.S.), and one count of possession of less than one gram of cocaine, a state jail felony. *See* TEX. HEALTH &

SAFETY CODE ANN. § 481.115(b) (West, Westlaw through 2015 R.S.). Martinez moved to suppress the drug evidence and the trial court granted the motion. The State now appeals. We affirm.

## I. BACKGROUND

It is undisputed that the evidence Martinez sought to suppress was obtained by police officers via a warrantless search incident to Martinez's arrest for public intoxication. The motion to suppress alleged that the officers lacked probable cause to arrest.

At the suppression hearing, Javier Guerrero stated that he was an officer with the Victoria Police Department on January 5, 2014. On that date, at around 11:40 p.m., he was dispatched to the G&G Lounge, a bar located on South Laurent in Victoria, to investigate a possible fight in the parking lot. Three other officers eventually responded to the call. When Guerrero arrived at the scene, he observed Martinez and his wife, Daniela Jaquez, arguing and screaming at each other in the back parking lot. Guerrero stated he believed that both individuals were intoxicated because they smelled of alcohol, they were having trouble standing, their eyes were glassy, and their speech was slurred. Additionally, Martinez's behavior was "very aggressive." According to Guerrero, Martinez was being uncooperative with police and would not let the officers talk or ask questions. Guerrero stated that "[w]e couldn't talk to him" because "[h]e would just talk over us."

Guerrero stated that fellow officer Patrick Quinn arrested Martinez for public intoxication.[1] See TEX. PENAL CODE ANN. § 49.02(a) (West, Westlaw through 2015 R.S.)

---

[1] At the outset of the suppression hearing, the prosecutor informed the trial court that Quinn would not be testifying because he is currently "under indictment in Harris County for charges of bribery and official oppression." The prosecutor explained that, according to Quinn's attorney, Quinn would invoke his Fifth Amendment right against self-incrimination and would not testify in the case. Guerrero testified that he saw no misconduct from Quinn at the time of the arrest.

("A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."). Guerrero stated that police administered no field sobriety tests to Martinez, and the encounter was not video-recorded because "the placement of the car was probably not [near] to where the scene was." According to Guerrero, the parking lot in question was in use at the time of the incident. Guerrero explained: "There is a Highway 185 directly in front of the bar. Then you have the local road to the other side of the bar where the parking lot is. So cars freely go in and out."

On cross-examination, Guerrero conceded that, in a report he filed regarding the incident, he did not mention that Martinez showed various signs of intoxication. Guerrero explained that this information was instead contained in the "main officer report," which had been filed by Quinn, as Quinn was the arresting officer. Guerrero also conceded that he did not observe anyone physically fighting. Guerrero agreed that he was "more focused" on Jaquez during the investigation. Defense counsel asked Guerrero: "Isn't it true that [Jaquez] was trying to tell you about her being assaulted?" Guerrero replied: "Yes, but she was being very uncooperative also .... She wasn't answering my questions when I was asking her. . . . I asked her what happened, and she said she don't give a [****]." Guerrero later denied that Jaquez told him that she had been assaulted.

Another officer, Timothy Ramirez, was at the scene and testified that he believed Martinez was intoxicated because "[h]e had slurred speech, a swayed stance; his eyes were red and glassy; and I could smell the odor of alcohol emitting from his breath and on his person." According to Ramirez, Martinez was "very aggressive and belligerent" and "would not cooperate with our investigation." Martinez repeatedly complained that it

A-4

took "[****]ing forever" for police to arrive.

Ramirez explained that the parking lot was "[a]pproximately 15 feet from the roadway, and that was the roadway between that parking lot and the bar and maybe 15 to 20 feet away from South Laurent." He opined that Martinez was not in a suitable condition to drive or to walk home because "[h]e could possibly pose a danger to himself and possibly others that close to an active roadway." Ramirez also stated that Martinez never identified anyone who could come pick him up and never asked to call for a taxi; although he acknowledged on cross-examination that police never asked Martinez whether there was anyone who could pick him up or if he was going to call for a taxi.

Jaquez testified that Martinez's uncle owns the G&G Lounge and that "a lot of his family" was present at the bar on the night in question. She stated that she got into a fight with an unknown female, and that she was punched by the male companion of the unknown female. She testified that she told officers she was looking for her glasses, but the officers "just said that we needed to hurry up and leave there." She stated that she had one beer that night, and Martinez had "[m]aybe around, like, three, four." She did not know that Martinez had cocaine on his person. According to Jaquez, "[t]]here was plenty of family" at the bar that night to drive her and her husband home.

The trial court granted the motion to suppress and issued the following findings of fact and conclusions of law:

> On January 15, 2014, officers with the Victoria Police Department responded to a call at the [G]&G lounge ... around 11:30 p.m. When the officers arrived, a verbal disturbance was occur[r]ing outside of the bar.
>
> There was no video or audio recording made of the contact between the officers and the subjects. Officers made contact with the defendant Roger Martinez and Daniela Vasquez [sic]. According to the testimony of Officer Guerrero, only Officer Quinn made "personal" contact with the defendant Roger Martinez. Officer Guerrero testified that Officer Quinn was the one

A-5

who "made the call" to arrest the defendant for public intoxication....

Officer Guerrero and Officer Ramirez testified that the defendant demonstrated signs of intoxication; however, neither arrested the defendant for public intoxication. Officer Quinn did not testify because he invoked his right against self-incrimination. No evidence was presented to indicate what Officer Quinn personally viewed or what if any offense was committed within his presence. A peace officer may arrest any offender without warrant for an offense committed in his presence or within his view. [TEX. CODE CRIM. PROC. ANN. art. 14.01 (West, Westlaw through 2015 R.S.)].

The appropriate test for determining whether probable cause exists to make a warrantless arrest for public intoxication is whether, at that moment, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing the arrested person had committed or was committing the offense of public intoxication. See Banda v. State, 890 S.W.2d 42, 52 (Tex. Crim. App. 1994); Britton v. State, 578 S.W.2d 685, 689 (Tex. Crim. App. 1978); see also Beck v. Ohio, 379 U.S. 89, 91 (1964); Guzman v. State, 955 S.W.2d 85, 90 (Tex. Crim. App. 1997).

Probable cause for arrest exists when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not, a particular suspect has committed an offense. State v. Garrett, 22 S.W.3d 650, 653-54 (Tex. App.-Austin 2000, no pet.) (citing Hughes v. State, 878 S.W.2d 142, 154 (Tex. Crim. App. 1992)). No evidence was presented to demonstrate if Officer Quinn had probable cause to arrest the defendant for public intoxication. In addition, there was no evidence which demonstrated whether the offense of public intoxication was committed within Officer Quinn's presence or view.

As stated above "a peace officer may arrest any offender without warrant for an offense committed in his presence or within his view." [TEX. CODE CRIM. PROC. ANN. art. 14.01]. The statute at issue will be ... taken and understood in their usual acceptation in common language. [TEX. GOV'T CODE ANN.] §§ 311.002, 311.011 [(West, Westlaw through 2015 R.S.)]. There was no evidence presented to demonstrate what if any information Officer Quinn used to justify the arrest. See Coleman v. State, 359 SW 3d 749 (T[e]x. Crim. App. 2011). In Coleman, an arrest was found to be valid when a non-arresting officer "participated" in the arrest by relaying his knowledge to fellow officers. Id.

The evidence did not show the relay of information between any officer and Officer Quinn at the suppression hearing in this case. Officer Quinn was the only officer who effectuated the arrest of the defendant. There was no evidence of what facts or circumstances Officer Quinn used to justify the

A-6

arrest. This court will not speculate as to what Officer Quinn's testimony would have been at the suppression hearing.

This appeal followed. See TEX. CODE CRIM. PROC. ANN. art. 44.01 (a)(5) (West, Westlaw through 2015 R.S.).

## II. DISCUSSION

The State argues by five issues that the trial court erred in granting the motion to suppress. Specifically, the State contends: (1) the standard of review should be de *novo;* (2) Guerrero and Ramirez were "participants in the arrest" for purposes of article 14.01 of the code of criminal procedure; (3) there was probable cause to support the arrest of Martinez for public intoxication; (4) Martinez's constitutional right to confrontation was not violated by Quinn's failure to testify; and (5) Martinez's compulsory process rights were not violated by Quinn's failure to testify. As each of the issues challenges the propriety of the trial court's suppression ruling, we will consider the issues together.

### A. Standard of Review

An appellate court reviews a trial court's pre-trial suppression ruling under a bifurcated standard. Almost total deference is afforded to the trial court's determination of fact. Determinations of fact include "who did what, when, where, how, or why" and "credibility determinations." Because trial judges ... are uniquely situated to observe first hand the demeanor and appearance of a witness, they are the sole arbiter of questions of fact and of the weight and credibility to give testimony. In that capacity, a trial judge is free to believe or disbelieve any part of the testimony as he sees fit. When a trial judge makes written findings of fact, as he did in the instant case, a reviewing court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. The reviewing court then proceeds to a *de novo* determination of the legal significance of the facts as found by the trial court.

*Baird v. State,* 398 S.W.3d 220, 226 (Tex. Crim. App. 2013) (footnotes and citations omitted).

## B.  Applicable Law

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State,* 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search occurred without a warrant. *Id.* Once the defendant has made this showing, the burden of proof shifts to the State to establish that the search was conducted pursuant to a warrant or was reasonable. *Id.* Here, it is undisputed that the search was conducted without a warrant.

A warrantless search incident to a lawful arrest is reasonable under the Fourth Amendment. *See, e.g., Arizona v. Gant,* 556 U.S. 332, 338 (2009). "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (West, Westlaw through 2015 R.S.). Probable cause for a such an arrest exists if, at the moment of the arrest, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to allow a prudent person to believe that the person arrested had committed or was committing an offense. *Amador v. State,* 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Probable cause requires "more than a bare suspicion" but less evidence than is required to sustain a conviction. *Id.*

A person commits the offense of public intoxication, a Class C misdemeanor, "if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another." TEX. PENAL CODE ANN. § 49.02(a), (c). "Public place" means "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools,

hospitals, apartment houses, office buildings, transport facilities, and shops." *Id.* § 1.07(a)(40) (West, Westlaw through 2015 R.S.); *see York v. State,* 342 S.W.3d 528, 536-37 (Tex. Crim. App. 2011) (holding that the "parking and sidewalk area" outside a gas station was a "public place"); *Kapuscinski v. State,* 878 S.W.2d 248 (Tex. App.-San Antonio 1994, writ ref'd) (holding that the evidence was sufficient to show that a nightclub parking lot, provided for guests of the nightclub and open to the public, was a "public place").

I.    **Analysis**

The State contends by its first issue that we should review the trial court's decision *de novo* because "there are no meaningful factual issues in dispute." However, the parties apparently disagree about the central fact issue involved in this case-i.e., whether Quinn observed or was informed that Martinez was committing a crime. *See Amador,* 275 S.W.3d at 878. The parties also disagree as to whether the "viewing officers"-Guerrero and Ramirez-effectively participated in the arrest such that Quinn's objective knowledge would be irrelevant. We will, in accordance with applicable law, defer to the trial court's fact findings and review its legal conclusions *de novo.*

The State cites *Willis v. State,* 669 S.W.2d 728, 730 (Tex. Crim. App. 1984), and *Astran v. State,* 799 S.W.2d 761, 764 (Tex. Crim. App. 1990), in arguing that the testimony of officers Guerrero and Ramirez established the legality of Martinez's arrest. In *Willis,* an undercover officer arranged by telephone to purchase heroin from the appellant. 669 S.W.2d at 730. After the purchase was completed, the undercover officer signaled other officers, who were waiting about two blocks away, that the appellant retained some drugs on his person. *Id.* The other officers followed appellant, stopped him, searched him, and

arrested him. *Id.* The court of criminal appeals found that the arrest and search were valid-despite the fact that that the arresting officers did not observe the drug sale-because a crime had been committed in the undercover officer's presence. *Id.* The Court noted the undercover officer "had first-hand knowledge of the offense and relayed that knowledge to his fellow officers." *Id.* Moreover, the undercover officer observed the arrest from about three-quarters of a mile away. *Id.* Thus, even though the undercover officer did not personally make the arrest, he "was just as much a participant in the arrest as if he had seized appellant himself." *Id.* Accordingly, the arrest was proper under article 14.01. *Id.*

In *Astran*, which also involved a controlled undercover drug purchase, the appellant similarly argued that his arrest and search were constitutionally invalid "because the [undercover] officer who saw the felony did not actually make the arrest." 799 S.W.2d at 762. Unlike in *Willis*, the undercover officer in *Astran* did not observe the eventual arrest. *Id.* Nevertheless, the Court found that the arrest and search were valid because the undercover officer "saw the felony, was part of a team of officers present at the scene of the offense, and relayed appellant's physical description and geographic location to the arresting officer." *Id.* at 763. Additionally, "[e]ven though [the undercover officer] did not visually observe the arrest, he was parked two blocks away and maintained constant radio communication with [the arresting officer] during the arrest." *Id.* The Court held that that an arrest is proper under article 14.01 "[a]s long as the facts show that the viewing officer effectively participated in the arrest and was fully aware of the circumstances of the arrest." *Id.* at 764.

Martinez argues that *Willis* and *Astran* are distinguishable because, here, there was no evidence that the "viewing" officers ever related their information to the arresting officer. We agree that the cases are distinguishable on that basis. In both *Willis* and *Astran*, the viewing officer "participated in the arrest" by relaying his observations to other officers, who then made the arrest based on those observations. See *id.* at 763; *Willis*, 669 S.W.2d at 730. On the other hand, here, neither viewing officer testified at the suppression hearing as to what Quinn, the arresting officer, knew or was able to observe personally. The prosecutor did not ask the testifying officers what Quinn observed or was able to observe. And, the testifying officers did not state that they informed Quinn of what *they* personally observed-i.e., that Martinez was intoxicated to the extent that he endangered himself or others.

The State, citing *Astran*, contends that the arrest was valid because officers Guerrero and Martinez "participated in the arrest" and were "fully aware of the circumstances of the arrest." See *Astran*, 799 S.W.2d at 764. But the trial court is the sole factfinder at a suppression hearing, and it may believe or disbelieve all or any part of a witness's testimony. See *Baird*, 398 S.W.3d at 226; *Amador*, 275 S.W.3d at 878. Here, it may or may not have been reasonable to infer from the officers' testimony either that they effectively participated in the arrest or that Quinn personally observed Martinez commit a crime. See *Amador*, 275 S.W.3d at 878 (noting that, "at a suppression hearing, the trial court, like any factfinder, may make reasonable inferences from the evidence presented"). Nevertheless, as is evident from its findings and conclusions, the trial court did not make those inferences.[2]   Instead, it found that "only Officer Quinn made 'personal'

---

z The State contends that, because the trial court "did not find any improper actions by Officer Ramirez or Officer Guerrero," it "implicitly accepted their testimony about the events concerning [Martinez]'s

A-11

contact" with Martinez and that "Officer Quinn was the only officer who effectuated the arrest of the defendant." It concluded that the other officers' testimony did not establish "what facts or circumstances Officer Quinn used to justify the arrest." Because these findings are supported by the record, we must uphold them. *See Baird*, 398 S.W.3d at 226.

For the foregoing reasons, we conclude that the trial court did not err in its determination that the State failed to meet its burden to show that the search was reasonable. *See Ford*, 158 S.W.3d at 492. We overrule the State's first three issues and need not reach the remaining two issues. *See* TEX. R. APP. P. 47.1.

## III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 1st
day of October, 2015.

---

arrest as credible." However, the trial court did not make any general credibility determinations in its findings. In any event, even if the trial court accepted the officers' testimony as true, that does not mean the trial court was bound to find that the arrest was valid because, as noted, the officers did not testify as to what the arresting officer observed or was able to observe, nor did they testify that they informed the arresting officer of their observations.

A-12